UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

CARLA RHODES,

    Plaintiff,

  v.

CAMDEN REDEVELOPMENT AGENCY,

    Defendant.

No. 1:20-cv-20337-NLH-KMW

OPINION

---

**APPEARANCES**:

CARLA RHODES
221 DOUGLAS AVENUE
HADDONFIELD, NJ 08033
PRO SE

    *Plaintiff appearing pro se*.

**HILLMAN, District Judge**

    This case arises from Plaintiff Carla Rhodes' allegation that she has suffered discrimination on the basis of her race, color, and sex while working for her employer, Defendant Camden Redevelopment Agency.  The matter is presently before the Court because Plaintiff, appearing *pro se*, has applied to proceed *in forma pauperis* ("IFP") and the Court must screen this complaint before allowing the case to proceed.  The Court will grant Plaintiff's IFP application, and will dismiss certain of Plaintiff's claims without prejudice but let her remaining claim proceed.

**Background**

Plaintiff is an African American woman who is employed by the Camden Redevelopment Agency.  Plaintiff alleges that, while working there, she has suffered a series of "hostile acts committed by [her] co-workers."  (ECF No. 1 at 7).  While Plaintiff alludes to multiple such acts having occurred, she describes only one with specificity.  Plaintiff alleges that, in October 2015, she was "physically charged by a white male . . . co-worker while sitting in her private office at work."  Id. She alleges that, despite having been the one assaulted, she was then "placed on administrative leave for a prolonged period of time and, then, was suspended while the male was not similarly punished."  She further alleges that she was "escorted from the office by a police officer," after which the co-worker who had charged her had circulated rumors that she had been handcuffed and was no longer employed by the Camden Redevelopment Agency. Id.

Plaintiff further alleges that "an executive who had nearly physically assaulted [her] in the past [was chosen] to lead the investigation into the October 2015 incident."  Id.  According to Plaintiff, her requests for assistance from that executive "fell on deaf ears" due to her cooperation with an investigation into the executive's own behavior by members of the Board of Commissioners.  Id.

2

Plaintiff then filed charges with the New Jersey Department of Law and Public Safety's Division on Civil Rights and then the Equal Employment Opportunity Commission.  On September 28, 2020, the EEOC issued her a Dismissal and Notice of Rights, stating that it was closing its file on Plaintiff's charge because it had adopted the findings of the state agency — which had apparently decided not to pursue any action based on Plaintiff's allegations.  The EEOC therefore issued Plaintiff a "right to sue" letter on that same date.  (ECF No. 1 at 11).  Finally, on December 29, 2020, Plaintiff filed this complaint.  The complaint specifically asserts Title VII claims for unequal terms and conditions of employment, hostile work environment, failure to promote, and retaliation on the basis of her race, color, and sex.  Plaintiff simultaneously filed an application to proceed *in forma pauperis* ("IFP").  (ECF No. 1-1).

## Discussion

### I. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff has asserted her claims under Title VII of the Civil Rights Act of 1964.

### II. Plaintiff's IFP Application

Pursuant to Local Civil Rule 54.3, the Clerk shall not be required to enter any suit, file any paper, issue any process, or render any other service for which a fee is prescribed,

3

unless the fee is paid in advance. Under certain circumstances, however, this Court may permit an indigent plaintiff to proceed *in forma pauperis*.

A pro se plaintiff wishing to proceed *in forma pauperis* must fill out form "AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs." The form requires the plaintiff to "[c]omplete all questions in this application," and "[d]o not leave any blanks." In addition, "if the answer to a question is '0,' 'none,' or 'not applicable (N/A),' write that response." The form contains twelve questions, and many questions contain numerous subparts, which are utilized by the Court to determine a plaintiff's indigency. Finally, as part of the application, the plaintiff must swear under penalty of perjury that the information contained in the application is true.

In this action, Plaintiff seeks to proceed *in forma pauperis*. As Plaintiff's IFP application states, under penalty of perjury, that her monthly expenses are greater than her total monthly income, (ECF No. 1-1), and that she otherwise lacks sufficient liquid assets to pay the filing fee, the Court finds that Plaintiff may proceed in forma pauperis and therefore grants her IFP application.

### III. <u>Standard for Screening Complaints Filed IFP</u>

Although § 1915 refers to "prisoners," federal courts apply § 1915 to non-prisoner IFP applications.  See <u>Hickson v. Mauro</u>, No. 11-6304, 2011 WL 6001088, at *1 (D.N.J. Nov. 30, 2011) (citing <u>Lister v. Dep't of Treasury</u>, 408 F.3d 1309, 1312 (10th Cir. 2005)); <u>Lister</u>, 408 F.3d at 1312 ("Section 1915(a) applies to all persons applying for IFP status, and not just to prisoners.").  Once IFP status has been granted, a court must follow the screening provisions of the IFP statute.  The screening provisions of the IFP statute require a federal court to dismiss an action *sua sponte* if, among other things, the action is frivolous or malicious, or if it fails to comply with the proper pleading standards.  See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); <u>Ball v. Famiglio</u>, 726 F.3d 448, 452 (3d Cir. 2013); <u>Martin v. U.S. Dep't of Homeland Sec.</u>, No. 17-3129, 2017 WL 3783702, at *1 (D.N.J. Aug. 30, 2017) ("Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.").

As indicated, this Court must follow the Rule 12(b)(6) standard in considering a pro se complaint.  *Pro se* complaints must be construed liberally, and all reasonable latitude must be

afforded the pro se litigant.  Estelle v. Gamble, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  But, pro se litigants "must still plead the essential elements of [their] claim and [are] not excused from conforming to the standard rules of civil procedure."  McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); Sykes v. Blockbuster Video, 205 F. App'x 961, 963 (3d Cir. 2006) (finding that pro se plaintiffs are expected to comply with the Federal Rules of Civil Procedure). When screening a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

6

cause of action will not do ...." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8, 127 S.Ct. 1955 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); see also Iqbal, 556 U.S. at 684, 129 S.Ct. 1937 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' ...."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal ... provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

**IV. Analysis**

The Court interprets Plaintiff's complaint to essentially

7

assert four claims: (1) unequal terms of employment, (2) hostile work environment, (3) failure to promote, and (4) retaliation. For the purposes of the standard applied to Rule 12(b)(6) motions, Plaintiff need not plead all of the *prima facie* elements of her discrimination claims at this stage, but still must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016).

The Court turns first to Plaintiff's claim for unequal terms and conditions of employment. "To establish a claim for unequal terms and conditions in employment, or disparate treatment, [Plaintiff] must establish that she (1) is a member of a protected class; (2) was qualified for the position; (3) was negatively affected by Defendant's employment decisions; and (4) was treated less favorably than employees not within her protected class." Dickerson v. New Jersey Institute of Technology, No. 19-8344 (KM) (JBC), 2020 WL 7054156, at *6 (D.N.J. Dec. 2, 2020) (citing Murphy v. Hous. Auth. & Urban Redevelopment Agency of City of Atl. City, 32 F. Supp. 2d 753, 763 (D.N.J. 1999), aff'd 208 F.3d 206 (3d Cir. 2000)). The Court finds that, with these elements in mind, Plaintiff has put forth sufficient factual allegations at this stage. Plaintiff alleges that she is an African American woman that was already employed by Defendant, that she suffered adverse employment

8

actions in the form of being suspended from work and escorted out of the office in handcuffs, and alleges that she suffered these actions despite her white male co-worker, who she alleges was the aggressor in their interaction, suffering no similar punishments.  The Court finds that these allegations are sufficient to survive its sua sponte screening at this stage.

Next, Plaintiff has asserted a claim for hostile work environment.  The elements of a Title VII hostile work environment claim are "that 1) the employee suffered intentional discrimination because of his/her [race, color, or sex], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability."  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (internal citations omitted).

Here, Plaintiff has failed to allege facts sufficient to sustain a hostile work environment claim.  While Plaintiff has alleged that one of her co-workers physically assaulted her, she does not allege that this incident occurred because of her race; and while she alleges that she suffered from a hostile environment and hostile actions taken by other employees over the course of three years, she does not allege any specific behavior or actions that contributed to creating a hostile

9

environment.  As her complaint puts forth only generalized allegations of a hostile work environment, the Court finds that she has failed to state a claim.

Plaintiff's third claim is for failure to promote.  To state a *prima facie* case of failure to promote in violation of Title VII, a plaintiff must show "(i) that [s]he belongs to a [protected category]; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [s]he was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."  Dickerson v. New Jersey Institute of Tech., No. 19-8344 (KM) (JBC), 2019 WL 6032378, at *6 (D.N.J. Nov. 14, 2019) (quoting Noel v. The Boeing Co., 622 F.3d 266, 274 (3d Cir. 2010)).

The Court further notes that, as to the second element, "[a]lthough some courts have held that failure to apply for a promotion is fatal to a failure to promote claim, many courts have overlooked this failure in certain cases, such as when the promotional system did not involve a formal application process and when a plaintiff's attempts to apply for a promotion have been rebuffed."  Id. (quoting Khair v. Campbell Soup Co., 893 F. Supp. 316, 331 (D.N.J. 1995), on reconsideration in part (July 3, 1995)).

Here, the Court finds that Plaintiff has also failed to sufficiently plead a claim for failure to promote.  Plaintiff alleges only that, due to having been placed on administrative leave for a prolonged period of time, she missed out on promotional opportunities.  However, Plaintiff fails to plead any specific promotional opportunities, whether she was qualified for them, whether she applied for or attempted to pursue them, or any specifics whatsoever about the alleged promotions she claims to have missed out on.  Without any specific factual allegations, Plaintiff's claims fail to meet Federal Rule of Civil Procedure 8(a)'s pleading standards, and cannot survive this Court's required screening.

Finally, the Court turns to Plaintiff's retaliation claim. "To establish a prima facie case of retaliation under Title VII . . . [Plaintiff] must plead (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." Davis v. City of Newark, 417 F. App'x 201, 202 (3d Cir. 2011) (citing Abramson v. William Paterson Coll., 260 F.3d 265, 286 (3d Cir. 2001)). Although Plaintiff has asserted a retaliation claim, she has not specified on what basis.  The only activity she alleges that could plausibly appear to qualify as a protected activity is her cooperation with the alleged investigation into the unnamed

executive's prior behavior, which she may be alleging impacted the executive's investigation into the incident in which the white male co-worker charged her.  However, Plaintiff does not provide any further factual allegations detailing this activity, and fails to allege that her race, color, or sex was in any way related to this alleged retaliation.  Accordingly, the Court finds that she has also failed to sufficiently state a Title VII retaliation claim.

## Conclusion

For the reasons expressed above, the Court will grant Plaintiff's IFP application (ECF No. 1-1).  Plaintiff's hostile work environment, failure to promote, and retaliation claims will be dismissed without prejudice, and her remaining Title VII claim may proceed.  If Plaintiff is able to able to assert sufficient facts in the future to set forth a plausible claim as to the claims dismissed without prejudice she may seek leave to amend the complaint.

An appropriate Order will be entered.


Date: January 8, 2021                /s Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.